**NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO 2-29-2024

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * * * * *
                                    *
UNITED STATES OF AMERICA            *
                                    *   23-cr-69-01-TSM
              v.                    *   23-cr-69-02-TSM
                                    *   October 30, 2023
     CENTERA BIOSCIENCE            *   10:10 a.m.
             AND                    *
        PAUL EFTANG                 *
                                    *
* * * * * * * * * * * * * * * * * * *
```

<u>TRANSCRIPT OF ARRAIGNMENT AND PLEA HEARING</u>
<u>BEFORE THE HONORABLE TALESHA LEAH SAINT-MARC</u>

<u>APPEARANCES</u>:

<u>For the Government</u>:          Alexander S. Chen, AUSA
                               U.S. Attorney's Office


<u>For the Defendants</u>:

(Centera Bioscience)          George M. Karavetsos, Esq.
                              Allison Leigh Borgatti, Esq.
                              Buchanan, Ingersoll & Rooney, P.C.

                              Thomas P. Colantuono, Esq.
                              Ward Law Group


(Paul Eftang)                 Paul K. Charlton, Esq.
                              Dentons US LLP


<u>Probation</u>:                  Riaka McCormick


<u>Court Reporter</u>:             Susan M. Bateman, RPR, CRR
                              Official Court Reporter
                              United States District Court
                              55 Pleasant Street
                              Concord, NH 03301
                              (603) 225-1453

```
 1                    P R O C E E D I N G S
 2            THE CLERK:  This Court is now in session and has
 3  for consideration an arraignment and plea hearing in the
 4  matter of the United States versus Centera Bioscience and Paul
 5  Eftang, case number 23-cr-69-TSM.
 6            Will counsel for the government and counsel for the
 7  defendants please identify themselves for the record?
 8            MR. CHEN:  Alexander Chen for the government, your
 9  Honor.
10            THE COURT:  Good morning.
11            MR. CHEN:  Good morning.
12            MR. CHARLTON:  Good morning, your Honor.
13            Paul Charlton with Dentons Law Firm appearing pro
14  hac vice with the Court's permission.
15            I represent Paul Eftang in his individual capacity,
16  your Honor.
17            THE COURT:  Good morning.
18            MR. CHARLTON:  Good morning.
19            MR. KARAVETSOS:  Good morning, your Honor.
20            George Karavetsos appearing pro hac vice as well,
21  and I represent Centera Bioscience.
22            THE COURT:  Good morning.
23            MR. KARAVETSOS:  Good morning.
24            MS. BORGATTI:  Good morning, your Honor.
25            Allison Borgatti, and I'm appearing pro hac vice on
```

1    behalf of Centera Bioscience.

2              THE COURT:  Good morning.

3              MR. COLANTUONO:  And I'm Attorney Thomas Colantuono

4    from the Ward Law Group in Manchester acting as local counsel

5    here today.

6              And I'm sitting back there because I'm a little

7    under the weather, and that's with the permission of the Court

8    if that's okay.

9              THE COURT:  That's fine.

10             MR. COLANTUONO:  Thank you.

11             THE COURT:  All right.  Good morning everyone.

12             Since we have both defendants, one in an individual

13   capacity and one serving as CEO and president, my intent is

14   just to do one colloquy.

15             Does anyone have any objection to that?

16             MR. CHEN:  No objection.

17             MR. CHARLTON:  No, your Honor.

18             MR. KARAVETSOS:  No, your Honor.

19             THE COURT:  Okay.  So I'll ask my deputy to swear

20   in the witness, please.

21             (The clerk swears in Paul Eftang)

22             THE CLERK:  Please state your name and spell your

23   last name for the record.

24             THE DEFENDANT:  Paul Eftang, E-F-T-A-N-G.

25             THE CLERK:  Thank you.

1          THE COURT:  Okay.  Thank you.

2          And everyone can remain seated throughout this.

3   Thank you.

4          So I just want to start out, Mr. Eftang, with just

5   advising you of a couple of rights that you have today.

6          First off, it is your right to remain silent.

7   You're not obligated to say anything today.  Certainly I'm

8   happy to hear from you, but to the extent that you would like

9   to remain silent, you do have that right because anything you

10  say can be used against you.

11         The second right you have is that you have a right

12  to counsel both individually and -- when I refer to you, I'm

13  going to be referring to you in your individual capacity and

14  as president and CEO of Centera.  You have a right to counsel.

15  And if you can't afford counsel, you have the right to ask the

16  Court to appoint counsel.

17         Do you understand that right?

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  Okay.  One thing I'll just remind the

20  parties and myself is that we have a reporter here today, and

21  so just try to talk a little bit slowly and not over each

22  other.  I have a tendency to talk fast, and so she will flag

23  me down if I do talk too quickly for you, okay?  All right.

24  Thank you.

25         All right.  So you've been brought before me today

1    on an information, a one-count information, that charges

2    introduction of misbranded drugs into interstate commerce in

3    violation of 21 U.S.C. Section 331(a).

4              Have you had a chance to review that?

5              THE DEFENDANT:  Yes, your Honor.

6              THE COURT:  Okay.

7              And counsel, both counsel, do you have a sense that

8    your client understands that information?

9              MR. CHARLTON:  I do, your Honor.

10             MR. KARAVETSOS:  Yes, your Honor.

11             THE COURT:  Okay.  Thank you.

12             So we will move forward with the colloquy now, and

13   during the hearing, sir, I'm going to ask you several

14   questions.  And everything we say, as I mentioned, is going to

15   be recorded and taken down by a court reporter.  I'm going to

16   need you to answer my questions out loud so that we can have

17   an accurate record of what takes place today.

18             Do you understand that?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  Thank you.

21             If you don't understand a question that I ask, you

22   should ask me to explain it because it's important for you to

23   understand every question that I ask you today.

24             You should also consult your attorneys if you have

25   any questions, and I'll ask you first to ask your attorneys

1   the questions, and then, if appropriate, they can relay those

2   questions to me.

3            Do you understand that?

4            THE DEFENDANT:  Yes, your Honor.

5            THE COURT:  In addition, I'm entitled to truthful

6   answers, and so that's why you were put under oath just a

7   minute ago.  And so the answers you give me to my questions

8   could be used against you later in a prosecution for perjury

9   or a prosecution for making a false statement if you don't

10  answer truthfully.  So it's very important that you tell me

11  the truth today.

12           Do you understand that?

13           THE DEFENDANT:  Yes, your Honor.

14           THE COURT:  How old are you, sir?

15           THE DEFENDANT:  I am 38.

16           THE COURT:  And tell me about your education.

17           How far did you go in school?

18           THE DEFENDANT:  I did two years at Arizona State

19  University, but I didn't finish.

20           THE COURT:  Any other education?

21           THE DEFENDANT:  Just, you know, professional

22  education.  No higher education.

23           THE COURT:  Okay.  Do you read and write in

24  English?

25           THE DEFENDANT:  I do.

1          THE COURT:  And have you ever been treated for any

2   mental health issues?

3          THE DEFENDANT:  I was diagnosed with depression

4   when I was in high school.

5          THE COURT:  Okay.  Are you currently taking any

6   medications for that diagnosis?

7          THE DEFENDANT:  No, your Honor.

8          THE COURT:  All right.  Have you taken any other

9   medications today?

10          THE DEFENDANT:  Just Zyrtec.

11          THE COURT:  Okay.  And is the Zyrtec -- is it just

12   for traditional -- for allergies?

13          THE DEFENDANT:  Antihistamine, yeah.

14          THE COURT:  Okay.  Have you ever been treated for

15   any drug or alcohol addiction?

16          THE DEFENDANT:  No, your Honor.

17          THE COURT:  And are you presently under the

18   influence of any alcoholic beverage or other prescribed

19   medication?

20          THE DEFENDANT:  No.

21          THE COURT:  And the Zyrtec, does it cause you to

22   have any difficulties understanding the proceedings?

23          THE DEFENDANT:  No.

24          THE COURT:  Okay.

25          So I have in front of me the two plea agreements,

1    and I understand one is signed by you individually and one is

2    signed by you in your capacity as president and CEO of Centera

3    Bioscience.

4             Are these both your signatures on these documents?

5             THE DEFENDANT:  Yes, your Honor.

6             THE COURT:  Okay.  Thank you.

7             And before signing the plea agreements did you

8    review every line of both plea agreements with your respective

9    counsel?

10            THE DEFENDANT:  Yes.

11            THE COURT:  Okay.

12            Attorney Charlton, I'll address these questions to

13   you first.

14            Has your client told you anything or have you

15   observed anything about your client involving medication,

16   drugs, alcohol, mental health issues, or other factors?

17            Please, you can remain seated.

18            MR. CHARLTON:  Thank you, your Honor.

19            No, your Honor, I have not seen anything that would

20   be of a concern.  No, your Honor.

21            THE COURT:  Okay.  And have you reviewed with your

22   client the charges to which he is to plead guilty to today?

23            MR. CHARLTON:  I have, your Honor.

24            THE COURT:  All right.  And have you reviewed each

25   paragraph of the plea agreement with him?

1      MR. CHARLTON:  Yes, your Honor.

2      THE COURT:  All right.  Thank you.

3      I'm sorry if I pronounce this incorrectly.

4  Attorney Karavetsos; is that correct?

5      MR. KARAVETSOS:  Karavetsos.  It's close, your

6  Honor.

7      THE COURT:  Okay.  I'm sorry about that.

8      MR. KARAVETSOS:  No worries.

9      THE COURT:  I'll ask you those same questions.

10      Has your client told you anything in his capacity

11  as CEO or have you observed anything regarding medication,

12  drugs, alcohol, health issues that would be impactful today?

13      MR. KARAVETSOS:  No, your Honor.

14      THE COURT:  Okay.  And have you reviewed the

15  charges as to the company with your client?

16      MR. KARAVETSOS:  Yes, your Honor.

17      THE COURT:  And have you reviewed each paragraph of

18  the plea agreement with him regarding the implications on the

19  company?

20      MR. KARAVETSOS:  Yes, your Honor.

21      THE COURT:  Okay.  Thank you.

22      Sir, have you had enough time to discuss your case

23  and your guilty plea with both of your attorneys before

24  entering into your guilty plea today?

25      THE DEFENDANT:  Yes, your Honor.

1    THE COURT:  And are you satisfied with the

2  representation that you've received from all of your attorneys

3  and the advice that they have given you so far in this case?

4    THE DEFENDANT:  Yes, your Honor.

5    THE COURT:  Do you think it's in your best

6  interests to plead guilty rather than to proceed to trial?

7    THE DEFENDANT:  Yes, your Honor.

8    THE COURT:  Okay.  So the information is a document

9  containing the written charges that have been made against

10  you, and you've indicated that you've received a copy of the

11  information, correct?

12    THE DEFENDANT:  Correct, your Honor.

13    THE COURT:  All right.  And have you fully

14  discussed the charge set forth in that information and the

15  case generally with both of your counsel -- or all of your

16  counsel rather?

17    THE DEFENDANT:  Yes, your Honor.

18    THE COURT:  And have you discussed with your

19  counsel any defenses to the charge that may be available to

20  you?

21    THE DEFENDANT:  Yes, your Honor.

22    THE COURT:  My understanding is that you intend to

23  plead guilty as to Count 1 of the information; is that

24  correct?

25    THE DEFENDANT:  That is correct, your Honor.

1          THE COURT:  And Count 1 charges you with a

2   violation of Section 21 United States Code Section 331(a),

3   introduction of misbranded drugs into interstate commerce, and

4   that's the count that you intend to plead guilty on today?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Okay.  And so to prove introduction of

7   misbranded drugs into interstate commerce in violation of 21

8   U.S.C. Section 331(a), the government must persuade all twelve

9   members of a jury beyond a reasonable doubt that there's

10  evidence on each of the following elements of this claim.

11         The first is that you introduced or caused the

12  introduction of a drug into interstate commerce, and the

13  second element is that the drug was adulterated or misbranded.

14         These are the elements of the charge to which you

15  would be pleading guilty to.  Do you understand that?

16         THE DEFENDANT:  I understand, your Honor.

17         THE COURT:  So what the prosecutor is going to do

18  now is he's going to tell me the facts that the United States

19  Attorney would be able to prove at trial if this case were to

20  proceed.

21         I'm going to ask you to listen carefully to those

22  facts because after the prosecutor finishes I'm going to ask

23  you, first, whether you heard and understood the facts, and

24  then, second, I'm going to ask whether what he said is true to

25  the best of your knowledge.  Okay?

1          THE DEFENDANT:  Okay.

2          THE COURT:  All right.  Thank you.

3          Attorney Chen.

4          MR. CHEN:  Thank you, your Honor.

5          If this matter went to trial, the government would

6     introduce evidence of the following facts:

7          Centera Bioscience is a company based in Tempe,

8     Arizona.  Paul Eftang is the president and chief executive

9     officer of Centera Bioscience.

10          The Food and Drug Administration, or FDA, is

11     charged with enforcing the Food, Drug, and Cosmetic Act, or

12     FDCA.  The FDCA defines drugs to include, one, articles

13     intended for use in the diagnosis, cure, mitigation,

14     treatment, or prevention of disease in man, 21 U.S.C. Section

15     321(g)(1)(B); and, two, articles (other than food) that are

16     intended to affect the structure or any function of the body

17     of man, 21 U.S.C. Section 321(g)(1)(C).

18          Federal regulations define intended use to mean the

19     objective intent of the persons legally responsible for the

20     labeling of drugs or their representatives.  The intent may be

21     shown by such persons' expressions, the design or composition

22     of the drugs, or by the circumstances surrounding the

23     distribution of the drugs.  This objective intent may, for

24     example, be shown by labeling claims, advertising matter, or

25     oral or written statements by such persons or their

1    representatives.  It's under 21 CFR 201.128.

2          The FDCA defines label as a display of written,

3    printed, or graphic matter upon the immediate container of any

4    article, 21 U.S.C. Section 321(k), and labeling as all labels

5    and other written, printed, or graphic matter, one, upon any

6    article or any of its containers or wrappers, or, two,

7    accompanying such article.  21 U.S.C. Section 321(m).

8          A drug is misbranded under the FDCA if its labeling

9    fails to bear adequate directions for use.  21 U.S.C. Section

10   352(f)(1).  Adequate directions for use means directions under

11   which a layman can use a drug safely for the purposes for

12   which it is intended.  21 CFR Section 201.5.  A drug is

13   misbranded under this provision if it fails to include, among

14   other things, instructions concerning the quantity and

15   frequency of dosage for each intended use.

16         A drug is also misbranded under the FDCA if it is a

17   prescription drug and it was dispensed without the

18   prescription of a practitioner licensed by law to administer

19   prescription drugs.  21 U.S.C. Section 353(b)(1).  A

20   prescription drug includes any drug which, because of its

21   toxicity or other potentiality for harmful effect, is not for

22   use except under the supervision of a practitioner licensed by

23   law to administer prescription drugs.  21 U.S.C. Section

24   353(b)(1)(A).

25         Between April 2017 and December 2021, Centera

1    Bioscience and Mr. Eftang sold multiple drugs, including

2    tianeptine, phenibut, adrafinil, and racetam drugs.  The

3    racetam drugs included, but are not limited to, piracetam,

4    aniracetam, coluracetam, and phenylpiracetam.  Centera

5    Bioscience and Mr. Eftang sold the drugs to consumers as

6    nootropic compounds intended to affect the structure or

7    function of the human body.  These drugs are prescription

8    drugs due to their toxicity and potential for harmful effect.

9    Centera Bioscience and Mr. Eftang sold these prescription

10   drugs without a valid prescription from a practitioner

11   licensed to administer such drugs.  Centera Bioscience and Mr.

12   Eftang shipped these drugs, or caused the shipment of these

13   drugs, to persons throughout the United States, including in

14   New Hampshire.  Centera Bioscience and Mr. Eftang also

15   marketed the drugs as nootropics through online platforms like

16   Facebook and Google.  Mr. Eftang and Centera Bioscience

17   employees also regularly made representations about these

18   drugs on a Reddit.com forum dedicated to Centera Bioscience

19   products.

20           The labeling of the tianeptine, adrafinil,

21   phenibut, and racetam drugs shipped did not bear adequate

22   directions for use.

23           Those are the facts the government would show at

24   trial.

25           THE COURT:  Thank you.

1          Mr. Eftang, did you hear what the prosecutor said?

2          THE DEFENDANT:  I did, your Honor.

3          THE COURT:  And was what the prosecutor said true?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  Was it correct?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  Are you pleading guilty today because

8     you are guilty?

9          THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  Now I'm going to summarize the terms of

11    the plea agreement regarding Centera and you individually.

12          In exchange for both of your plea agreements on

13    Count 1 of the information you all have agreed to the

14    following binding sentence stipulations:

15          The first is a year of probation, and the second is

16    that no fine shall be imposed.

17          Attorney Chen, did I miss anything?

18          MR. CHEN:  No, not as to Mr. Eftang in his

19    individual capacity.

20          THE COURT:  Okay.  Thank you.

21          Okay.  And as to Centera, the sentencing

22    stipulations are a term of three years of probation.

23          The conditions of probation shall include the

24    recommended conditions for organizations under USSG Section

25    8D1.4 that the Court deems applicable, a special assessment of

1    $125 per count for a total of $125, the forfeiture provisions

2    set forth in the plea agreement, and that no fine shall be

3    imposed.

4              Did I miss anything on Centera?

5              MR. CHEN:  No, your Honor.

6              And, just for the record, the forfeiture provisions

7    are set forth in section 7 of the corporate plea, and they

8    contain an agreement to a criminal forfeiture money judgment

9    in the amount of $2.4 million and the agreement to forfeit all

10   drugs seized by Customs and Border Protection and by the FDA's

11   Office of Criminal Investigations.

12             THE COURT:  Thank you.

13             Did I miss anything else?

14             MR. KARAVETSOS:  No, your Honor.

15             THE COURT:  Thank you.

16             MR. CHARLTON:  Your Honor, may I, just for the

17   record, state that on the elements of the offense this is a

18   strict liability offense.

19             THE COURT:  Yes.  Thank you.

20             MR. CHARLTON:  Thank you, your Honor.

21             THE COURT:  Okay.  And so are those the terms of

22   the plea agreement with the United States as you understand

23   them?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  Okay.  Now what I want to do is I want

1    to go over the possible penalties that you could face given a

2    Class A misdemeanor guilty plea, okay?  So these are the

3    maximum things that you would face, and these are -- in the

4    proposal these are in section 4.

5              So as to Centera, do you understand that a maximum

6    fine of $200,000 could be imposed under 18 United States Code

7    Section 3571(c)(5)?  Additionally, a term of probation of not

8    more than five years under 18 United States Code Section

9    3561(c)(2), and a mandatory special assessment of $125, $125

10   for each count of conviction, at or before the time of

11   sentencing under 18 United States Code Section

12   3013(a)(1)(B)(iii)?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  Okay.

15             And as to you individually, the penalties for the

16   offense are a maximum term of prison -- a one year prison term

17   under 21 United States Code Section 331(a) and 333(a)(1), and

18   a maximum fine of $100,000 under 18 United States Code Section

19   3571(b)(5), a term of supervised release not more than one

20   year under 18 United States Code Section 3583(b)(3), and that

21   your failure to comply with any of the conditions under your

22   supervised release could result in the revocation of your

23   supervised release requiring that you serve a prison term with

24   no credit for time already spent on supervised release, and

25   then, finally, a mandatory special assessment of $25, $25 for

1    each count of conviction, at or before the time of sentencing

2    under 18 United States Code Section 3013(a)(1)(A)(iii).

3              Do you understand that?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  Okay.

6              So the sentencing guidelines do apply in this case

7    because this is an offense of a Class A misdemeanor, and the

8    sentencing guidelines -- the Sentencing Commission has issued

9    advisory sentencing guidelines that judges are required to

10   consider when sentencing and when deciding a sentence in a

11   criminal case.

12             Have you and your attorneys talked about the

13   sentencing guidelines and how they may apply in this case?

14             THE DEFENDANT:  Yes, your Honor.

15             THE COURT:  Now I can't yet determine the advisory

16   guidelines of the sentencing range in your case.  I won't be

17   able to do that until after probation prepares its presentence

18   report.  However, you and your attorney and the United States

19   Attorney will be given an opportunity to challenge the facts

20   in that presentence report.

21             Do you understand that?

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  After I make a decision about what

24   advisory guideline sentencing range applies in your case, I

25   will still have authority to impose a sentence that is more or

1    less severe than the sentence within the guidelines.

2                    Do you understand that?

3                    THE DEFENDANT:  Yes, your Honor.

4                    THE COURT:  However, I understand that the plea

5    agreement that you have is a binding plea agreement with a

6    specific sentence, and so I will defer acceptance of this

7    agreement until the time of the sentencing.  And if I don't

8    accept the agreement, I will permit you to withdraw your plea

9    and you won't be allowed to withdraw your plea for any other

10   reason.

11                   Do you understand that?

12                   THE DEFENDANT:  Yes, your Honor.

13                   THE COURT:  So now I'm going to talk to you about

14   appellate waiver.  I'm going to ask you now about your waiver

15   of the rights for appeal.

16                   An appeal means that your case would be reviewed by

17   a higher court to make sure that everything happened correctly

18   in your case.

19                   Do you understand that?

20                   THE DEFENDANT:  Yes, your Honor.

21                   THE COURT:  You have a right to challenge your

22   guilty plea and any sentence I impose by taking a direct

23   appeal.

24                   Do you understand that?

25                   THE DEFENDANT:  Yes, your Honor.

1    THE COURT:  By entering into a plea agreement you

2  have given up many of your rights to appeal.  The appeal

3  rights that you're giving up are described in your plea

4  agreement.

5    Have you had a chance to go over those?

6    THE DEFENDANT:  Yes, your Honor.

7    THE COURT:  And do you understand what you're

8  giving up?

9    THE DEFENDANT:  I do, your Honor.

10    THE COURT:  Do you understand that by entering into

11  this agreement and entering into the plea of guilty you will

12  have waived or given up your right to appeal all or part of

13  your sentence that I impose?

14    THE DEFENDANT:  I do, your Honor.

15    THE COURT:  And do you understand that you're also

16  waiving your right to appeal the sentence I impose if it's

17  lower or within the sentencing guidelines, or, if it's

18  pursuant to a minimum mandatory sentence, if it's consistent

19  with or lower than the sentencing range stipulated in your

20  agreement?

21    Do you understand that?

22    THE DEFENDANT:  Yes, your Honor.

23    THE COURT:  In addition, you're waiving your right

24  to challenge certain aspects of your guilty plea and your

25  sentence with a separate process known as collateral review.

1          Do you understand that you're waiving that?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  And, counsel, have you gone over your

4   clients rights of waiver of appeal in detail both as to Mr.

5   Eftang individually and as to the corporation?

6          MR. CHARLTON:  We have, your Honor.

7          If I may say, I believe we said that he may have a

8   right for a collateral attack at some point in time in the

9   future, your Honor.

10          THE COURT:  Oh.  My apologies.  That's right.

11   That's right.  I'm sorry.

12          MR. CHARLTON:  Thank you, your Honor.

13          THE COURT:  You're welcome.

14          Do you understand that, my apologies, that you

15   would have a right to collateral attack?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  Okay.  Thank you.

18          And did your client understand those waivers?

19          MR. CHARLTON:  Yes, your Honor.

20          MR. KARAVETSOS:  Yes, your Honor.

21          THE COURT:  Thank you.

22          Has the government extended any previous formal

23   plea offers to the defense?

24          MR. CHEN:  No, your Honor.

25          THE COURT:  Okay.  Mr. Eftang, when you enter into

1  a guilty plea, you also give up important rights guaranteed by

2  the United States Constitution.

3          Do you understand that?

4          THE DEFENDANT:  I do, your Honor.

5          THE COURT:  You have the right to plead not guilty

6  as you originally did -- or to persist in that not guilty

7  plea.  Excuse me.  You have a right to plead not guilty in

8  this case.

9          Do you understand that?

10         THE DEFENDANT:  I do, your Honor.

11         THE COURT:  Okay.  You have a right to a trial by

12 jury.

13         Do you understand that?

14         THE DEFENDANT:  Yes, your Honor.

15         THE COURT:  And during a jury trial you would have

16 the right to the assistance of counsel throughout.

17         THE DEFENDANT:  Yes, your Honor.

18         THE COURT:  You would have the right to see and

19 hear all witnesses and have them cross-examined in your

20 defense.

21         You would have a right not to testify unless you

22 voluntarily decided to do so in your own defense.

23         Do you understand those rights?

24         THE DEFENDANT:  Yes, your Honor.

25         THE COURT:  You also have the right to ask the

1   Court to issue subpoenas and to direct and to challenge any

2   other evidence or challenge testimony.

3            Do you understand that?

4            THE DEFENDANT:  I do, your Honor.

5            THE COURT:  Okay.  And if you were to go to trial,

6   you wouldn't be required to prove that you are innocent.

7            Do you understand that?

8            THE DEFENDANT:  I do, your Honor.

9            THE COURT:  Instead, it would be on the government

10  to prove your guilt beyond a reasonable doubt with respect to

11  every essential element of the offenses for which you've been

12  charged.

13           Do you understand that?

14           THE DEFENDANT:  Yes, your Honor.

15           THE COURT:  And you would have a right to a

16  unanimous jury.  And by pleading guilty you're giving up that

17  right to a trial in which twelve jurors would have to

18  unanimously agree upon your guilt for your conviction.

19           Do you understand that?

20           THE DEFENDANT:  Yes, your Honor.

21           THE COURT:  And so if you enter a guilty plea and I

22  accept your plea, there will be no trial and you'll have given

23  up your right to a trial as well as those other rights

24  associated with the trial as I just described.

25           Do you understand that?

1       THE DEFENDANT:  Yes, your Honor.

2       THE COURT:  Now in thinking of each of the rights

3  that I just went over, is it your intent by entering a guilty

4  plea to give up those rights?

5       THE DEFENDANT:  Yes, your Honor.

6       THE COURT:  Have there been any threats made

7  against you or anyone in your family or in your circle that's

8  led you to plead guilty today?

9       THE DEFENDANT:  No, your Honor.

10       THE COURT:  Have there been any promises of

11  leniency or encouragement to enter into the guilty plea?

12       THE DEFENDANT:  No, your Honor.

13       THE COURT:  And if I accept your guilty plea, the

14  only thing left in this case would be an imposition of a

15  sentence.

16       Do you understand that?

17       THE DEFENDANT:  Yes, your Honor.

18       THE COURT:  So this is the last chance that you'll

19  have to change your mind before we go forward and I find you

20  guilty.  You won't be able to withdraw from that plea.

21       Do you understand that?

22       THE DEFENDANT:  I do, your Honor.

23       THE COURT:  Okay.  Are you ready to enter your plea

24  of guilty?

25       THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  All right.

2          Does your client waive a formal reading of the

3   information?

4          MR. CHARLTON:  Yes, your Honor.

5          THE COURT:  Thank you.

6          MR. KARAVETSOS:  Yes, your Honor.

7          THE COURT:  Thank you.

8          So as to Count 1, Mr. Eftang, in your individual

9   capacity, charging you with violation of 331(a), introduction

10  of misbranded drugs into interstate commerce, how do you

11  plead?

12         THE DEFENDANT:  Guilty.

13         THE COURT:  Okay.  And as to your capacity as

14  president and CEO of Centera, how do you plead?

15         THE DEFENDANT:  Guilty.

16         THE COURT:  Thank you.

17         I accept your plea and I adjudge you guilty.

18         I'm now going to enter my findings into the record.

19         I have questioned Mr. Eftang and his counsel

20  regarding his guilty plea both individually and as the

21  president and CEO of Centera Bioscience.

22         Mr. Eftang and his counsel have advised me that

23  they have discussed the guilty plea and all aspects of the

24  charges against Mr. Eftang and Centera and any defenses that

25  they may have.

1        I have observed Mr. Eftang make answers.  I've

2   observed his demeanor and his manner while answering my

3   questions and his apparent intelligence and attitude.

4        Mr. Eftang does not appear to be under the

5   influence of any medical (sic), drug, alcohol or any

6   substance, or any mental illness or disorder which might

7   affect his judgment in any manner.

8        I find that Mr. Eftang's plea of guilty has a basis

9   in fact.

10       I find that the guilty plea is free of any coercive

11  influence of any kind.

12       I also find there have been no promises of any kind

13  that have been made to Mr. Eftang by anyone apart from the

14  statements set forth in the written plea agreement which is on

15  file with this court.

16       I find that Mr. Eftang has entered the plea

17  competently and voluntarily based on a full knowledge of the

18  charges against him and the corporation and the consequences

19  of that plea.

20       So a date for sentencing has been set for February

21  5, 2024 at 10:00 a.m.

22       And I understand that the parties have an agreement

23  as to the release of Mr. Eftang; is that correct?

24       MR. CHEN:  Yes, your Honor.

25       THE COURT:  Okay.  So I've reviewed the pretrial

1    report as well as the proposed conditions of release, and I do

2    find that they're sufficient.  So I'm just going to go over

3    those with you right now, okay, Mr. Eftang?  So that means

4    that you remain free until the sentencing and of course

5    thereafter assuming I accept the sentencing.

6              So it's ordered that the release of the defendant

7    shall be subject to the following conditions:

8              You shall not commit any offense in violation of

9    federal, state, or local law while on release in this case.

10             You must cooperate in the collection of a DNA

11   sample if that collection is authorized under 42 United States

12   Code 14135A.

13             You shall immediately advise the Court, defense

14   counsel, and the U.S. Attorney in writing before any changes

15   in your address or your telephone number.

16             And you shall appear at all proceedings as required

17   and surrender for service of any sentence imposed or directed.

18             Do you understand those conditions that I've gone

19   over?

20             THE DEFENDANT:  Yes, your Honor.

21             THE COURT:  Okay.  And do you understand that a

22   failure to appear is another criminal offense which may result

23   in imprisonment?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  Okay.  And do you understand that if

1    you violate these conditions, that that's serious and could

2    lead to imprisonment as well?

3             THE DEFENDANT:  Yes, your Honor.

4             THE COURT:  Okay.

5             Do you have any questions about the conditions that

6    I've imposed?  And, again, I'll just ask you to ask your

7    counsel first and then they can direct questions to me.

8             (The defendant confers with counsel)

9             THE DEFENDANT:  No, your Honor.

10            THE COURT:  Okay.  So you will have some paperwork

11   to sign before you head out.

12            Is there anything else from any counsel?

13            MR. CHEN:  Oh, just a quick clarification, your

14   Honor.

15            Did you say the date of sentencing is February 10?

16            THE COURT:  It is February 5th --

17            MR. CHEN:  5th.  Okay.  Thank you.

18            THE COURT:  -- at 10:00 a.m.

19            You're welcome.  Anything else?

20            MR. CHARLTON:  Nothing for the defense, your Honor.

21            MR. KARAVETSOS:  No, your Honor.

22            THE COURT:  All right.  Thank you.

23            Thank you, Mr. Eftang.

24            MR. CHEN:  Thank you.

25            (Conclusion of hearing at 10:42 a.m.)

C E R T I F I C A T E


     I, Susan M. Bateman, do hereby certify that the

foregoing transcript is a true and accurate transcription of

the within proceedings to the best of my knowledge, skill,

ability and belief.



Submitted:  12-1-23     /s/   Susan M. Bateman _____
                        SUSAN M. BATEMAN, RPR, CRR